UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **BLUE ENGINE BIOLOGICS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **ARTERIOCYTE MEDICAL SYSTEMS, INC.,** | )    **Civil Action No. 21-cv-11098-DJC** |
| | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                            **February 10, 2022**

**I.      Introduction**

Plaintiff Blue Engine Biologics LLC ("Blue Engine") has filed this lawsuit against Defendant Arteriocyte Medical Systems ("Arteriocyte") alleging direct patent infringement in violation of 35 U.S.C. § 271(a), induced patent infringement in violation of 35 U.S.C. § 271(b) and willful patent infringement under 35 U.S.C. § 284. D. 10. Arteriocyte now moves to dismiss the direct infringement claims in Blue Engine's amended complaint. D. 14.[1] For the reasons stated below, the Court DENIES the motion.

**II.     Standard of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir.

_____

[1]In light of Arteriocyte's filing of D. 14, its motion to dismiss the amended complaint, its earlier motion to dismiss the original complaint, D. 8, is DENIED as moot.

2012) (internal citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).  In sum, the complaint must provide sufficient factual allegations for the Court to conclude that the claim is "plausible on its face."  García-Catalán, 734 F.3d at 103.  "In determining whether a [pleading] crosses the plausibility threshold, the reviewing court [must] draw on its judicial experience and common sense."  Id. (internal quotation marks and citations omitted).  "This context-specific inquiry does not demand a high degree of factual specificity."  Id. (internal quotation marks and citations omitted).

### III.    Factual Background

Taking all factual allegations in the amended complaint as true, as required at this stage, the Court summarizes the following facts.

Blue Engine holds U.S. Patent No. 6,811,777 ("the '777 Patent") entitled "Compositions and Minimally Invasive Methods for Treating Incomplete Connective Tissue Repair," U.S. Patent No. 9,320,762 ("the '762 patent") entitled "Compositions and Minimally Invasive Methods for Treating Incomplete Tissue Repair," and U.S. Patent No. 8,741,242 ("the '282 patent") entitled "Method for Treatment of Tendinosis with Platelet Rich Plasma."  D. 10 ¶¶ 10–12.  The '777 patent and the '762 patent claim methods "for using compositions containing platelet-rich plasma for the treatment of a variety of tissue lesions and in particular the delivery of platelet-rich plasma

to connective tissue." Id. ¶¶ 14, 29.  The '282 patent claim methods for using an "autologous platelet-rich plasma composition" to "promote vascularization of tissue in mammals."  Id. ¶ 42.

As relevant to the motion to dismiss, Blue Engines alleges that Arteriocyte has and continues to infringe its patents directly, 35 U.S.C. § 271(a),  as to "at least" claims 1 and 4 of the '777 patent, claims 1 and 4 of the '762 patent, and claims 1, 5, 6 and 7 of the '282 patent "through its own internal testing, through research and development in conjunction with other researchers in the field, and through its demonstration and/or use of" the Magellan Autologous Platelet Separator ("Accused Product") under the trade name Isto Biologics "to current and prospective customers."  Id. ¶¶ 6, 16, 31, 44.  The Accused Product is a "autologous concentration system" that "delivers concentrated platelets and cells at the point of care" to promote "bone and tissue regeneration."  Id. ¶ 6; D. 10-4 at 3–4, D. 10-5 at 3–4, D. 10-6 at 3–4.  The Accused Product provides the blood samples necessary to perform Blue Engine's method patents.  See D. 10 ¶¶ 6, 15, 30, 43.

## IV.    Procedural History

Blue Engine instituted this action on July 2, 2021, D. 1, and later amended its complaint, D. 10.  Arteriocyte now moves to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).  D. 14.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 29.

## V.    Discussion

### A.    <u>Direct Infringement</u>

The Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  35 U.S.C. § 271(a).  As to

the method claims asserted here, "direct infringement . . . requires a showing that every step of the claimed method has been practiced." Meyer Intellectual Props. Ltd. v. Bodum, Inc., 690 F.3d 1354, 1366 (Fed. Cir. 2012) (citing Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1317 (Fed. Cir. 2009)).  However, "[a] plaintiff is not required to plead infringement on an element-by-element basis."  Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1352 (Fed. Cir. 2021); see Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018).

Given the plausibility standard for pleadings, "a plaintiff cannot assert a plausible claim for infringement under the Iqbal/Twombly standard by reciting the claim elements and merely concluding that the accused product has those elements."  Bot M8 LLC, 4 F.4th at 1353.  "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."  Id.  However, "it is enough 'that a complaint place[s] the alleged infringer on notice of what activity . . . is being accused of infringement.'"  Id. at 1352 (quoting Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017)); Simplivity Corp. v. Springpath, Inc., No. 15-13345, 2016 WL 5388951, at *3 (D. Mass. July 15, 2016) (concluding that the "factual allegations (which it is required to accept as true) put [the defendant] on notice, and allow a reasonable inference of liability").

Arteriocyte argues that Blue Engine's direct infringement claims fail because Blue Engine does not plausibly allege that Arteriocyte "itself treats individuals," a required step in each of the method claims.  D. 14 at 4.  The Court concludes that Blue Engine's direct infringement claims are plausible.  D. 10 ¶¶ 16, 31, 44.  As incorporated into the complaint (and which the Court must presume to be true for resolution of the motion to dismiss), Blue Engine's claim charts for the '777 patent, the '782 patent and the '282 patent, allege how use of the Accused Product would plausibly

result in performance of all the method steps, including the treatment of individuals.  D. 10-4 ('777 patent); D. 10-5 ('762 patent); D. 10-6 ('282 patent).

For example, Blue Engine articulates the alleged infringing use for claims 1 and 4 in the '777 patent claim chart.  D. 10-4.  The '777 patent is a method "for using compositions containing platelet-rich plasma for the treatment of a variety of tissue lesions and in particular the delivery of platelet-rich plasma to connective tissue."  D. 10 ¶ 14; D. 10-4.  In method step 1(a), "determining a site of  connective tissue injury in the individual," D. 10-1 at 12, Blue Engine refers to Arteriocyte's website promotion that the Accused Product "concentrates regenerative potential" in the patient's blood sample for the purpose of putting it back into the body to "repair" the patient's tissue.  D. 10-4 at 2–3.  This process begins with locating tissue in need of "repair."  Id.

In method step 1(b), "introducing a platelet-rich plasma composition into and around the site of connective tissue injury," D. 10-1 at 12, Blue Engine alleges that Arteriocyte completes this step by advertising that the Accused Product "delivers concentrated platelets and cells at the point of care," again citing to Arteriocyte's product description on its website.  Id. at 3–5.  Arteriocyte's website clarifies that the "point of care" refers to parts of the body in need of "bone and tissue regeneration."  Id.

In method step 1(c), "wherein no exogenous activator is added to the composition prior to its introduction into and around the site of injury," D. 10-1 at 12,  Blue Engine cites Arteriocyte's website promoting the Accused Product as a "fully automated system" that "processes the blood without need for manual manipulation."  Id. at 5–7.  The Accused Product "deliver[s]" the blood "into a collection syringe and [it] is ready for immediate application."  Id.

Claim 4 of the '777 incorporates the method of claim 1, "wherein the platelet-rich plasma composition comprises platelets obtained from the individual."  D. 10-1 at 12.  Arteriocyte's

advertising materials also state that the Accused Product uses the patient's own blood sample to create the platelet-rich plasma.  See D. 10-4 at  (describing the process as "draw[ing]" "a small sample of blood and/or bone marrow . . . from [the patient's] vein, hip, or lower extremity" and "placing" [t]he blood and/or bone marrow . . . in a specialized centrifuge that will separate and concentrate [the patient's] own natural healing agents").

Blue Engine plausibly alleges that Arteriocyte practices these method steps as to Claims 1 and 4 of '777 as well as to claims 1 and 4 of the '762 patent and claims 1, 5, 6 and 7 of the '282 patent, compare D. 10-2 at 16 and D. 10-3 at 21 with D. 10-5 and D. 10-6, through its own internal testing and by demonstrating the Accused Product's capability to current and prospective customers.  D. 10 ¶¶ 16, 31, 44.  As to internal testing, "[w]hile [Arteriocyte] undoubtedly designs its products for other users, the Court finds it plausible that [it] may have tested its products or otherwise executed the relevant methods in the course of product development and support." Sentius Int'l, LLC v. Apple Inc., No. 4:20-cv-00477, 2020 WL 6081775, at *3 (N.D. Cal, Oct 15, 2020) (denying motion to dismiss where these allegations made out plausible claim of direct infringement); see Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd., 807 F.3d 1283, 1296–97 (Fed. Cir. 2015) (upholding jury verdict of direct infringement based upon infringer's "simulation" of method steps); see also Anticancer, Inc. v. Fujifilm Med. Sys. U.S.A., No. 09-cv-1311, 2013 WL 947397, at *5 (S.D. Cal. Mar. 11, 2013) (noting that although a plaintiff must show the defendant performed all of the steps in the claimed methods, "[d]irect infringement of a method claim can be based on even one instance of the claimed method being performed").  Even where claim charts focus on method steps to be completed by a defendant's customers, Sapphire Crossing LLC v. Robinhood Markets, No. 18-1717-MN-CJB, 2021 WL 149023, at *3 (D. Del. Jan. 15, 2021), it is a fair and reasonable inference as Blue Engine alleges here, that  "a . . . company . . .

would, from time to time, conduct . . . internal testing of its . . . product" and "if its employees did so, then it seems plausible that they would be doing exactly what the customer 'users' are alleged to be doing in the claim charts—all of which is alleged to infringe [the claims at issue]." Id.; D. 10 ¶¶ 16, 31, 44.  The same is true here as alleged to internal testing and product demonstrations for customers.  See Quantum Group, Inc. v. American Sensor, Inc., No. 96C0761, 1998 WL 766707, at *7 (N.D. Ill. April 2, 1998) (noting that although "mere display of an infringing product for promotional purposes does not offend the statute, the operation of the product at a sales demonstration constitutes an illegal use"); see also Oxygenator Water Techs., Inc. v. Tennant Co., No. 20-cv-358, 2020 WL 4572062, at *3 (D. Minn. Aug. 7, 2020) (concluding that "[plaintiff] pleads plausible direct infringement claims based on allegations that [defendant] uses the accused product—that is, practices all steps of the claimed method—in testing and demonstrations that occur occasionally as part of [defendant's] manufacturing and sales process").

Blue Engine has also plausibly stated a third basis for direct infringement—"through research and development in conjunction with other researchers in the field," D. 10 ¶¶ 16, 31, 44. Although materials outside of the pleadings generally cannot be relied upon in consideration of a motion to dismiss, the Court may take judicial notice of government agency reports.  Martin v. Mead Johnson Nutrition Co., No. 09-11609-NMG, 2010 WL 3928710, at *2 (D. Mass. Sept. 13, 2010) and case cited.  In its opposition, Blue Engine relies upon the National Institutes of Health website referencing a clinical trial undertaken regarding a method related to its Accused Product, D. 15 at 14-15; D. 15-2, 15-3.  Although Arteriocyte's involvement in this clinical trial (as opposed to that of outside, principal investigators) may be a matter of reasonable dispute, the Court may still take judicial notice of the fact that such clinical trials took place, see Gent v. Cuna Mut. Ins. Soc'y, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (noting that court was limited its judicial notice to

information on website that was "not subject to reasonable dispute"), and provides support for the plausibility of Blue Engine's "research and development" basis for its direct infringement claim against Arteriocyte.

Accordingly, Blue Engine has asserted a plausible claim for direct infringement and the Court denies the motion to dismiss.

## VI.     Conclusion

For the foregoing reasons, the Court DENIES Arteriocyte's motion to dismiss, D. 14.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge